UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

STEVEN L. GRINOLDS,         ) Case No. CV 10-5145 JC
                            )
            Plaintiff,      )
                            ) MEMORANDUM OPINION
       v.                   )
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social      )
Security,                   )
                            )
            Defendant.      )

## I. SUMMARY

On July 19, 2010, plaintiff Steven L. Grinolds ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").[1] The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; July 21, 2010 Case Management Order, ¶ 5.

---

[1] On December 7, 2010, plaintiff filed a reply in support of Plaintiff's Motion ("Reply").

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") at step two of the sequential evaluation process are supported by substantial evidence and are free from material error.[2]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 5, 2007, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 23). Plaintiff asserted that he became disabled on November 11, 2003, due to schizophrenia, ADHD, heart trouble, pins in his right hip, and severe hyperactivity. (AR 129). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 1, 2009. (AR 23, 36).

On December 17, 2009, the ALJ determined that plaintiff was not disabled since December 5, 2007. (AR 23, 31). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairment: osteoarthritis of post-surgical right hip (AR 25); (2) plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments (AR 27); (3) plaintiff retains the residual functional capacity to perform medium work, except plaintiff can only frequently bend, stoop, kneel, squat, and crawl (AR 28); (4) plaintiff could perform his past relevant work as a meter reader, cashier II, interpreter for the deaf, industrial cleaner, driver, and cashier checker (AR 31); and (5) plaintiff's allegations regarding his limitations appear exaggerated. (AR 28).

The Appeals Council denied plaintiff's application for review. (AR 1).

---

[2]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

2

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in

significant numbers in the national economy? If so, the
claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.  Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

///
///
///

## IV. DISCUSSION

### A. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Psychiatrists

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

---

[3] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

quotations omitted). The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

Although the treating physician's opinion is generally given more weight, a nontreating physician's opinion may support rejecting the conflicting opinion of a claimant's treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). If a nontreating physician's opinion is based on independent clinical findings that differ from the findings of the treating physician, the nontreating physician's opinion may be considered substantial evidence. Id. at 1041 (citing Magallanes, 881 F.2d at 751). If that is the case, then the ALJ has complete authority to resolve the conflict.[4] On the other hand, if the nontreating physician's opinion contradicts the treating physician's opinion but is not based on independent clinical findings, or is based on the clinical findings also considered by the treating physician, the ALJ can only reject the treating physician's opinion

---

[4]Where there is conflicting medical evidence, the Secretary must assess credibility and resolve the conflict. Thomas, 278 F.3d at 956-57.

6

by giving specific, legitimate reasons based on substantial evidence in the record. Id. (citing Magallanes, 881 F.2d at 755); see Magallanes, 881 F.2d at 751-52 (Substantial evidence that can support the conflicting opinion of a nonexamining medical advisor can include: laboratory test results, contrary reports from examining physicians, and testimony from the plaintiff that is inconsistent with the treating physician's opinions.).

### 2. Pertinent Facts

#### a. Treating Psychiatrists

On July 12, 2007, Dr. Michael Johanek, one of plaintiff's treating psychiatrists at the California Department of Corrections and Rehabilitation Parole Outpatient Clinic ("POC"), stated in progress notes that plaintiff "states that his meds are just fine right now. Does not want to change anything. [Plaintiff] presents with clear sensorium without delusions or hallucinations. [Plaintiff] does rock back and forth constantly, says he has since his car accident." (AR 333).

On September 13, 2007, Dr. Johanek observed that plaintiff had "rapid speaking with some flight of ideas," and noted that plaintiff would "continue[] on his current meds." (AR 333).

In progress notes for October through December 2007, Dr. Johanek noted that plaintiff appeared "stable and in a good mood," but was having ongoing problems with women, had lost his written prescription on one occasion, arrived three hours late for another appointment, and had improperly used Seroquel to help with sleep. (AR 332).

On April 24, 2008, Dr. Johanek noted that plaintiff "[was] animated as usual, rocking constantly back and forth in his seat," and that plaintiff was "disappointed about being turned down for SSI, and [plaintiff] certainly rates that coverage." (AR 331).

///
///

On June 26, 2008, Dr. John Benson, another one of plaintiff's POC treating psychiatrists, stated in progress notes that plaintiff "continues to display rocking motion all the time, otherwise he presents as [symptom] free." (AR 330).

On February 3, 2009, Dr. Benson completed a Work Capacity Evaluation (Mental) check-the-box form in which he opines that plaintiff had marked limitations in his ability to understand, remember and carry out very short and simple instructions and extreme limitations in his ability to (i) remember locations and work-like procedures, (ii) maintain attention and concentration for extended periods, (iii) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, (iv) sustain an ordinary routine without special supervision, (v) work in coordination with or in proximity to others without being distracted by them, (vi) make simple work-related decisions, (vii) interest [sic] appropriately with the general public, and (viii) ask simple questions or request assistance. (AR 335). Dr. Benson also noted that plaintiff had organic hallucinations, organic thought disorder, and severe memory and attention problems. (AR 335).

### b. State Agency Psychiatrists

On February 18, 2008, Dr. Reynaldo Abejuela, a state agency psychiatrist, performed a complete psychological evaluation of plaintiff, which included a mental status evaluation. (AR 272-79). Based on his examination of plaintiff and plaintiff's history, Dr. Abejuela opined that plaintiff: (i) had no mental restriction in his daily activities; (ii) had mild difficulties in maintaining social functioning; (iii) had no repeated episodes of emotional deterioration in work-like situations; (iv) was not impaired in his ability to understand, carry out, and remember simple instructions; (v) was mildly impaired in his concentration, persistence and pace; (vi) was mildly impaired in his ability to understand, carry out, and remember complex instructions; (vii) was mildly impaired in his response to co-workers, supervisors and the public; (viii) was mildly impaired in his ability to respond

appropriately to usual work situations; and (ix) was mildly impaired in his ability to deal with changes in a routine work setting, which "does not preclude function." (AR 277-78). Dr. Abejuela opined that plaintiff's overall psychiatric limitations were "none to mild."[5] (AR 278).

On February 26, 2008, Dr. Kelly J. Loomis, a non-examining, state agency psychiatrist, reviewed plaintiff's medical records and completed a Psychiatric Review Technique form in which she opined that plaintiff had (i) no restriction of activities of daily living; (ii) mild difficulties in maintaining social functioning; (iii) mild difficulties in maintaining concentration, persistence or pace; and (iv) no repeated episodes of decompensation of extended duration. (AR 327). Accordingly, Dr. Loomis concluded that plaintiff's mental condition was not severe. (AR 280, 293).

On July 16, 2008, Dr. Barbara A Smith, a state agency reviewing psychiatrist affirmed Dr. Loomis' assessment that plaintiff's mental condition was not severe. (AR 327).

### 3. Analysis

Plaintiff contends that the ALJ improperly rejected the opinions of plaintiff's treating psychiatrists, Drs. Benson and Johanek in favor of the opinions of Dr. Abejuela.[6] (Plaintiff's Motion at 7-11; Reply at 3-7). The Court finds that a remand or reversal on this basis is not warranted.

///
///

---

[5] Dr. Abejuela also noted the following: "It is expected that with continuous psychiatric medication and abstinence from alcohol and methamphetamines, [plaintiff's] psychiatric symptoms should dissipate in the next few months." (AR 278).

[6] While plaintiff suggests that the ALJ erred in his evaluation of much of the medical evidence, plaintiff, nonetheless, asserts in the Reply that "[t]he only question presented is whether the ALJ articulated specific and legitimate reasons for rejecting the opinions of Dr. Johanek and Dr. Benson, the treating psychiatrists that described [plaintiff] as disabled." (Reply at 3).

9

### a. Dr. Benson

First, an ALJ may properly reject a medical opinion that conflicts with the physician's own treatment notes or the medical record as a whole. Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); Batson, 359 F.3d at 1195 (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings); see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ need not accept treating physician's opinions that are conclusory and brief, or unsupported by clinical findings, or physician's own treatment notes). Here, as the ALJ correctly noted, Dr. Benson's opinions that plaintiff suffered from extreme mental limitations conflict with the treating psychiatrist's own progress notes. For example, Dr. Benson's mental status examinations of plaintiff on October 29 and December 15, 2008 were normal or mostly benign. (AR 26, 330, 343). At those visits plaintiff noted that his medication was "working well" and the doctor observed that plaintiff's mood was "always level, always normal." (AR 26, 330, 343). The ALJ also noted that plaintiff's other mental status examinations were similarly unremarkable. (AR 26) (citing Exhibit 2F at 1 [AR 186]; Exhibit 3F at 6, 11, 30 [AR 193, 198, 217]; Exhibit 16F at 5 [AR 340]). Dr. Johanek, plaintiff's other treating psychiatrist noted that plaintiff was "doing well on his current meds,"[7] was "keeping busy" attending college full time and had received an A grade in his sign language class, was staying sober, and was "stable and in a good mood." (AR 26) (citing Exhibit 14F at 3-4 [AR 331-32]). The ALJ noted Dr. Johanek's progress notes from 2007 reflect that plaintiff's mental problems (*i.e.*, difficulty remembering things, rocking, rapid speech) were "few

---

[7]Another POC psychiatrist indicated that plaintiff was compliant with his prescribed medication. (AR 340).

10

and rare" and "not severely limiting." (AR 26) (citing Exhibit14F at 5 [AR 333]). By June 26, 2008 Dr. Johanek noted that plaintiff was symptom free except for the rocking. (AR 26) (citing Exhibit14F at 2 [AR 330]).

Second, an ALJ may properly reject a treating physician's opinions that are inconsistent with a claimant's demonstrated abilities. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected a treating physician's opinion who prescribed conservative treatment and where the plaintiff's activities and lack of complaints were inconsistent with the physician's disability assessment); Magallanes, 881 F.2d at 751-52 (ALJ may properly reject a medical opinion if it is inconsistent with a plaintiff's demonstrated abilities). Here, the ALJ reasonably concluded that plaintiff's enrollment in college classes on a full-time basis, and his ability to achieve a high mark (even if in only one class) suggests that plaintiff is not as profoundly limited as Dr. Benson states. (AR 27).

Finally, the ALJ properly rejected Dr. Benson's opinions in favor of the conflicting opinions of the state examining psychiatrist (who determined that plaintiff's psychiatric limitations were at most "none to mild"), and the state agency reviewing psychiatrists (each of whom concluded that plaintiff's mental impairments were "non-severe"). (AR 26-27, 272-79, ). The opinion of Dr. Abejuela was supported by his independent examination of plaintiff, and thus, even without more, constituted substantial evidence upon which the ALJ could properly rely to reject the treating physicians' opinions. See, e.g., Tonapetyan, 242 F.3d at 1149 (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews, 53 F.3d at 1041. The opinions of the state agency reviewing psychiatrists also constitute substantial evidence supporting the ALJ's decision since they are consistent with the examining psychiatrist's opinions and underlying independent examination, as well as the other medical evidence in the record. See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or

11

nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it").

Plaintiff argues that the ALJ misread the medical opinion evidence, misdefined a "[medical] term of art," and selectively ignored parts of the record that did not support the ALJ's decision. (Plaintiff's Motion at 7-11; Reply at 4-7). The Court will not, however, second-guess the ALJ's reasonable interpretation of the medical evidence, especially when the ALJ's interpretation is consistent with the opinions of three separate medical professionals and the record as a whole. Even if the record contains evidence which may support inferences more favorable to plaintiff, any conflict in the properly supported medical opinion evidence is the sole province of the ALJ to resolve. Andrews, 53 F.3d at 1041.

Accordingly, a remand or reversal is not warranted based on the ALJ's reasonable rejection of Dr. Benson's opinions.

### b. Dr. Johanek

Plaintiff contends that the ALJ failed properly to consider Dr. Johanek's statements in progress notes, specifically that plaintiff (i) "rock[ed] back and forth constantly" (AR 331, 333); (ii) had "rapid speaking with some flight of ideas" (AR 333); (iii) experienced ongoing problems with women, had lost his written prescription on one occasion, arrived three hours late for an appointment, and had improperly used Seroquel on one occasion (AR 332); and (iv) "certainly rates [SSI] coverage." (AR 331). The Court finds that the ALJ's evaluation of Dr. Johanek's statements is supported by substantial evidence and free from material error.

First, with respect to Dr. Johanek's notes about plaintiff's "difficulty remembering things, rocking, [and] rapid speech," the ALJ found such problems "not severely limiting." (AR 26 & n.2) (citing Exhibit 14F at 5 [AR 333]). To the extent Dr. Johanek opined to the contrary, the ALJ rejected such opinion based on specific and legitimate reasons supported by substantial evidence. Any finding that plaintiff's memory problems, rocking or rapid speech caused more than a minimal limitation on plaintiff's mental functioning conflicts with Dr. Johanek's own progress notes, the other medical record evidence, plaintiff's demonstrated abilities, and the opinions of three consultative psychiatrists. Although the ALJ did not expressly mention Dr. Johanek by name, he was not required to do so. See Thomas, 278 F.3d at 957 (ALJ can meet burden of rejecting a treating physician's opinion by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). In reaching his decision, the ALJ met his burden to reject Dr. Johanek's opinions by setting out a detailed and thorough summary of facts and conflicting clinical evidence – including specific citation to the pages of the Administrative Record that contain Dr. Johanek's progress notes for plaintiff. (AR 26 & n.2) (citing Exhibit14F at 3-5 [AR 331-33]).

         Second, the ALJ did not err by failing expressly to address Dr. Johanek's progress notes that plaintiff experienced ongoing problems with women, had lost his written prescription on one occasion, arrived three hours late for an appointment, and had improperly used Seroquel on one occasion. (AR 332). The ALJ was not required to discuss every piece of evidence in the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). Here, the ALJ accounted for all significant probative evidence of

13

plaintiff's impairment and limitations. Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ must "fully account[] for the context of materials or all parts of the testimony and reports"). The ALJ stated that he carefully considered "all the evidence" and plaintiff's "complete medical history" in accordance with administration regulations. (AR 23). The ALJ expressly found that plaintiff's memory problems caused no material limitations. (AR 26). Simply because the ALJ did not discuss cumulative statements from Dr. Johanek's progress notes regarding allegations of similar memory limitations does not mean he failed to consider that evidence. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]"). Moreover, plaintiff points to no evidence that such isolated complaints reflected any functional limitations that would last for a continuous twelve-month period.

Finally, the ALJ was not required to provide any explanation for rejecting Dr. Johanek's conclusory assertion that plaintiff "certainly rates [SSI] coverage." See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must provide an explanation only when he rejects "significant probative evidence.") (citation omitted). Dr. Johanek's non-medical opinion that plaintiff is entitled to benefits is not binding on the Commissioner. See Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008)[8] ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); 20 C.F.R. § 416.927(e)(1) ("We are responsible for making the

---

[8]Courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

14

determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Accordingly, a remand or reversal is not warranted on this basis.

### B. The ALJ Properly Evaluated the Severity of Plaintiff's Impairments

#### 1. Pertinent Law

At step two of the sequential evaluation process, plaintiff has the burden to present evidence of medical signs, symptoms and laboratory findings[9] that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov, 420 F.3d at 1004-1005 (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. § 416.920. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." Id. (quoting SSR 96-4p, 1996 WL 374187, at *1-*2).

---

[9]A medical "sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Ukolov, 420 F.3d at 1005 (quoting Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1 n.2) (Social Security rulings are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007)) A "symptom" is "an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]" Id. (quoting SSR 96-4p, 1996 WL 374187, at *1 n.2); see also 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." Ukolov, 420 F.3d at 1005 (citation omitted); SSR 96-4p, 1996 WL 374187, at *1-2 ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.").

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the normal standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (citation omitted).

### 2. Additional Pertinent Facts

At step two of the sequential evaluation process, the ALJ determined that "[p]laintiff's medically determinable mental impairments of bipolar disorder, substance abuse disorder (in remission), and attention deficit hyperactivity disorder (ADHD) . . . do not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities, and are therefor nonsevere." (AR 25). The ALJ based his step-two determination on "[t]he medical evidence [which] shows that [plaintiff] has treated successfully for bipolar disorder and ADHD," and Dr. Abejuela's assessment that any impairment in plaintiff's occupational and social functioning was "none to mild" (an assessment shared by the state agency reviewing psychiatrists). (AR 25-26). The ALJ also considered the degree of plaintiff's limitation in each of the four "paragraph B" criteria:

> In making this finding, the undersigned has considered the four
> broad functional areas set out in the disability regulations for
> evaluating mental disorders and in section 12.00C of the Listing of

16

| | |
|---|---|
| 1 | Impairments . . . . These four broad functional areas are known as the |
| 2 | "paragraph B" criteria. |
| 3 | The first functional area is activities of daily living. In this |
| 4 | area, [plaintiff] has no limitation. The next functional area is social |
| 5 | functioning. In this area, [plaintiff] has mild limitation. The third |
| 6 | functional area is concentration, persistence or pace. In this area, |
| 7 | [plaintiff] has mild limitation. The fourth functional area is episodes |
| 8 | of decompensation. In this area, [plaintiff] has experienced no |
| 9 | episodes of decompensation which have been of extended duration. |
| 10 | Again, these findings are supported by the reporting of the psychiatric |
| 11 | consultative examiner, Dr. Reynaldo Abejuela; and the opinions of |
| 12 | the State Agency review physicians (Exhibits 8F, pp. 6-7 [AR 277- |
| 13 | 78]; 9F [AR 280-90], 10F [AR 291-93], and 13F [AR 327-28]). In |
| 14 | addition, the findings are supported by the whole of the treatment |
| 15 | record. |

(AR 26-27).

### 3. Analysis

Plaintiff contends that reversal or remand is warranted because the ALJ failed to find a severe mental impairment at step two. (Plaintiff's Motion at 11; Reply at 3). Specifically, plaintiff argues that the ALJ's findings at step two are erroneous because the ALJ (i) improperly evaluated the opinions of plaintiff's treating physicians, Drs. Benson and Johanek; and (ii) misinterpreted plaintiff's other mental health records. (Plaintiff's Motion at 3-12; Reply at 3-7). The Court finds that the ALJ's step two findings are free from material error and are supported by substantial evidence.

The record medical evidence clearly supports the ALJ's determination at step two that plaintiff did not have a severe mental impairment. In determining whether or not a plaintiff's mental impairment is severe, ALJs are to determine the

degree of limitation in the following four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. If the degree of limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities.[10] See 20 C.F.R. § 416.920a(c)-(d). Here, the ALJ found no limitations in plaintiff's activities of daily living, only mild limitations in plaintiff's social functioning, concentration, persistence, and pace, and no episodes of decompensation. (AR 16). Therefore, the ALJ properly concluded that plaintiff did not have a severe mental impairment. See 20 C.F.R. § 416.920a(d)(1). Substantial medical evidence supports the ALJ's conclusion. As the ALJ noted, his findings are consistent with Dr. Abejuela's assessment that any impairment in plaintiff's occupational and social functioning was "none to mild." (AR 26-27, 277-78). In addition, Dr. Loomis and Dr. Smith, the state agency reviewing psychiatrists, both found that plaintiff did not have a severe mental impairment. (AR 280, 293, 327). As discussed above, these medical opinions constitute substantial evidence which supports the ALJ's findings. See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 600; Andrews, 53 F.3d at 1041.

The opinions of Drs. Benson and Johanek do not undercut the ALJ's findings at step two. As discussed above, the ALJ properly evaluated the opinions of the two doctors and, to the extent he rejected those opinions, the ALJ did so based on specific and legitimate, clear and convincing reasons supported by substantial evidence. While plaintiff suggests that other medical records demonstrate that his mental impairments have more than a minimal effect on his

---

[10]Basic work activities include: (1) understanding, carrying out, and remembering simple instructions; (2) responding appropriately to supervision, co-workers and usual work situations; and (3) dealing with changes in a routine work setting. See 20 C.F.R. § 416.921.

ability to work, this Court will not second-guess the ALJ's reasonable interpretation that they do not, even if such evidence could give rise to inferences more favorable to plaintiff.

Accordingly, a remand or reversal is not warranted on this basis.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 10, 2011

                                                                /s/
                                      Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE